## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PRESCRIPTION SUPPLY, INC., et al.,          Case No. 2:16-cv-12070

             Plaintiffs,          Honorable Arthur J. Tarnow

             v.          Magistrate Judge David G. Grand

MOUSSA "MARK" MUSA, et al.,

             Defendants.

                                   /

### DEFENDANT CARE HOME RX, CORP.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

Defendant Care Home Rx, Corp. ("Care Home") respectfully moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims against Care Home in the Complaint (Doc. No. 1) ("Compl.") filed by Plaintiffs Prescription Supply, Inc. ("PSI") and LTC Pharmacy, LLC ("LTC") (jointly, "Plaintiffs").

In accordance with E.D. Mich. L.R. 7.1(a), undersigned counsel contacted Plaintiffs' counsel on July 8, 2016 to (1) explain the nature of this Motion and its legal basis, and (2) request concurrence in the relief sought; however, such concurrence was not received.

WHEREFORE, for the reasons stated in the accompanying Brief, Care Home respectfully requests that this Court grant its Motion and enter an Order (1) dismissing all of Plaintiffs' claims against Care Home with prejudice; (2) awarding Care Home its costs and fees, including attorney fees, incurred in having to defend this action; and (3) granting any other relief this Court deems appropriate.

Respectfully submitted,

Date: July 8, 2016

*s/ Kathryn E. Hickner*
Kathryn E. Hickner (P62285)
Paul R. Harris (Ohio Bar # 0079538)
(Admission Pending)
Daniela Paez (Ohio Bar # 0091212)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
216-583-7000
Fax: 216-583-7001
khickner@ulmer.com
pharris@ulmer.com
dpaezparedes@ulmer.com

*Attorneys for Defendant Care Home Rx, Corp.*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PRESCRIPTION SUPPLY, INC., et al.,           Case No. 2:16-cv-12070

            Plaintiffs,                      Honorable Arthur J. Tarnow

            v.                               Magistrate Judge David G. Grand

MOUSSA "MARK" MUSA, et al.,

            Defendants.

_____/

## BRIEF IN SUPPORT OF CARE HOME RX, CORP.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether Plaintiffs' claims against Care Home should be dismissed in their entirety because the allegations in the Complaint concerning Care Home are not sufficiently plausible, and Plaintiffs have failed to state a claim against Care Home upon which relief may be granted?

Care Home answers "yes."

Plaintiffs would answer "no."

The Court should answer "yes."

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

Care Home relies on Fed. R. Civ. P. 12(b)(6), *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014), M.C.L. § 445.1902, *et seq*., and the additional authorities cited in its accompanying Brief.

## I.      INTRODUCTION

The Court should dismiss, *with prejudice*, all claims asserted against Defendant Care Home Rx, Corp. ("Care Home") in the Complaint (Doc. No. 1) ("Compl.") pursuant to Fed. R. Civ. P. 12(b)(6) because, as to all of its allegations against Care Home, the Complaint fails to state a claim as a matter of law and because the factual allegations in the Complaint are not sufficiently plausible under Fed. R. Civ. P. 8(a)(2). Plaintiffs' thirteen-count Complaint seeks relief arising out of a number of agreements between Plaintiffs and Care Home's co-defendants, Moussa "Mark" Musa ("Mark") and Mohamad "Mike" Musa ("Mike"). Plaintiffs allege—in a conclusory fashion and with no supporting factual allegations—that Care Home somehow benefited from Mark and Mike's actions. In their haste to assert every imaginable claim against Care Home, however, Plaintiffs filed a complaint that is deficient as a matter of law for at least the following 8 reasons:

1.      Plaintiffs' claim against Care Home under the Uniform Trade Secrets Act rests on information that is not "secret" and, thus, does not constitute a "trade secret" as a matter of law. Further, Plaintiffs fail to allege that Care Home engaged in "misappropriation" as that term is defined under the Uniform Trade Secrets Act. Therefore, Plaintiffs have failed to plead facts plausibly entitling them to any relief with respect to that claim.

2.      Plaintiffs' claim against Care Home for tortious interference with business relationships fails because Plaintiffs have failed to allege that Care Home committed ***any*** affirmative act—let alone a wrongful act, as is required to establish a tortious interference claim. Therefore, Plaintiffs' claim should be dismissed on that basis alone.

3.      Plaintiffs cannot assert claims for breach of contract or breach

of fiduciary duty against Care Home because the Complaint does not allege that there are any contracts between Plaintiffs and Care Home, nor does it allege that Care Home owes Plaintiffs a fiduciary duty.

4.    Plaintiffs' claims for unfair competition and for tortious interference with business relationships should be dismissed as preempted by the Uniform Trade Secrets Act because those claims rest on the same factual allegations as Plaintiffs' claim under the Uniform Trade Secrets Act.

5.    Plaintiffs' claim for defamation against Care Home fails because Plaintiffs have not identified, with any specificity, a false statement made by Care Home itself to a third party; thus, Plaintiffs have failed to allege a plausible claim for defamation as a matter of law.

6.    Plaintiffs' conversion claim against Care Home is fatally flawed as a matter of law because Plaintiffs have failed to plead facts to allege that Care Home is exercising dominion over Plaintiffs' identifiable personal property, and because Plaintiffs' claim is not based on specific, readily identifiable personal property.

7.    Plaintiffs' conspiracy claim against Care Home fails because the Complaint fails to plead any facts to support the conclusion that Care Home acted in concert with any of its co-defendants, and because the Complaint fails to plausibly allege that Care Home is liable for any tort or unlawful act that could form the basis of Plaintiffs' conspiracy claim.

8.    Plaintiffs' claim for unjust enrichment against Care Home fails because Plaintiffs have not pled any facts to plausibly allege that Plaintiffs conferred any benefit upon Care Home.

## II.    ALLEGATIONS IN THE COMPLAINT

Plaintiffs are PSI and its wholly owned subsidiary, LTC. (Compl. ¶¶ 1-2.)  The Complaint seeks various forms of relief arising out of several contracts between PSI, LTC, Mark, Mike and ASAP, an entity formerly owned by Mark and Mike. (*See id.* at ¶¶ 11-30.)

2

Plaintiffs allege that ASAP purchased pharmaceuticals from PSI on credit and that PSI had a security interest in ASAP's inventory. (*Id*. at ¶ 15.) ASAP's debt to PSI was personally guaranteed by Mark Musa and Mike Musa. (*Id*. at ¶ 16.)  Plaintiffs claim that, in December 2013, ASAP, Mark and Mike Musa "fell behind on their payments" due "on the credit account" with PSI. (*Id*. at ¶ 17.) PSI subsequently purchased ASAP's assets from Mark and Mike. (*Id*. at ¶ 21.)

Upon selling ASAP's assets, Mark and Mike entered into employment agreements with LTC. (*Id*. at ¶ 25.)  LTC is a Michigan company that is "engaged in the retail sale of prescriptions to long term care facilities" and "conducts business throughout the State of Michigan." (*Id*. at ¶¶ 2, 10.)  Pursuant to their employment agreements with LTC, Mark and Mike allegedly agreed to refrain from competing with LTC or disclosing its confidential information. (*Id*. at ¶¶ 26-28.)  The Complaint alleges that Mark and Mike breached their agreements with Plaintiffs by "unlawfully" competing with LTC. (*Id*. at ¶ 31.)

Care Home is a retail pharmacy that was incorporated in Michigan on August 28, 2014 by Mahesh Pydipati. (*Id*. at ¶ 6.)  Plaintiffs ***do not***—and cannot— allege that Care Home is a party to any of the purported agreements between PSI, LTC, ASAP, Mark and Mike, which are attached to the Complaint. (*See id*. at Ex.'s A, C-H, J-L.)  Nor does the Complaint allege any relationship between Plaintiffs and Care Home.  Although the Complaint alleges that "Defendants"

3

"misappropriated trade secrets" "disclosed to" Mark and Mike "during their employment with LTC," it does not allege any acts by Care Home. (*Id.* at ¶¶ 67-68.)  Rather, Plaintiffs baselessly claim that Care Home "assisted" Mark and Mike and benefitted from their conduct in some unspecified manner. (*Id.* at ¶ 31-33.)

The Complaint sets forth no facts plausibly linking Care Home to Plaintiffs or to ASAP, Mark and/or Mike.  Plaintiffs nonetheless sued Care Home, claiming that ***Mark and Mike*** once "represent[ed] to Plaintiffs . . . that they had contemplated opening another retail pharmacy that would be owned by a third party, maybe even [Mark's] wife," and leaping to the baseless conclusion, "[u]pon information and belief," that "Care Home was formed for this purpose in August 2014." (*Id.* at ¶ 32.)  Nothing in the Complaint supports that factual leap.  Indeed, Plaintiffs acknowledge that Care Home was incorporated by Mahesh Pydipati. (*Id.* at ¶ 13.)  Plaintiffs' unsupported assertion is further belied by their allegation that Mark and Mike "represent[ed] . . . that they had contemplated opening" their hypothetical pharmacy "if they did not enter into a 'workout' APA with Plaintiffs," which the Complaint claims happened in July 2015—i.e., almost ***one year after*** Care Home's incorporation.  (*See id.* at ¶¶ 20-21, 32.)

## III.   LAW AND ARGUMENT

The Court should dismiss Plaintiffs' claims against Care Home with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), because even accepting the

allegations in the Complaint as true, Plaintiffs have failed to state a claim against Care Home as a matter of law and the factual allegations in the Complaint are not sufficiently plausible as required under Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint "must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The pleaded factual allegations must do more than demonstrate a "sheer possibility that a defendant has acted unlawfully." *Fitts v. Snyder*, No. 12-13575, 2014 WL 1304640, at *1 (E.D. Mich. Mar. 31, 2014) (Tarnow, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). Under Fed. R. Civ. P. 8(a)(2), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "conclusory statements do not suffice." *Id*. The "factual allegations" of the complaint "must be enough to raise a right to relief above the speculative level. . . ." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir. 2011) (citing *Twombly*, 550 U.S. at 555). The Court "need not accept as true legal conclusions or draw unwarranted factual inferences." *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998).

**A.    The Court Should Dismiss Plaintiffs' UTSA Claim Because Plaintiffs Have Failed to Allege Any Protectable Trade Secret or Any Intentional Act by Care Home.**

Plaintiffs have failed to allege a plausible claim for Misappropriation of Trade Secrets against Care Home under the Michigan Uniform Trade Secrets Act ("MUTSA").[1]  Under MUTSA, a "claim of misappropriation of trade secrets has three elements: (1) the existence of a trade secret; (2) the defendant's acquisition of the trade secret in confidence; and (3) the defendant's unauthorized use of it." *Dice Corp. v. Bold Techs.*, 913 F. Supp. 2d 389, 406 (E.D. Mich. 2012), *aff'd*, 556 F. App'x 378 (6th Cir. 2014) (citations omitted).

Here, Plaintiffs have not alleged or identified any protectable "trade secret" under MUTSA.  Further, Plaintiffs do not allege that Care Home itself actually "misappropriated" Plaintiffs' information.  Therefore, Plaintiffs' have failed to state a plausible claim for Trade Secret Misappropriation against Care Home.

**1.    Plaintiffs Have Failed to Allege Any Protectable Trade Secret Under MUTSA.**

Plaintiffs have not alleged or identified any protectable trade secret under MUTSA.  MUTSA defines "trade secret" as "information, including a

---

[1] Although Count III of the Complaint purports to assert a claim under Ohio Rev. Code § 1333.61, *et seq.*, the claims against Care Home are governed by Michigan law because "[i]t is well-established that, in a diversity case such as this one, a federal court must apply the substantive law of the state in which the court sits." *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002).

formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:" (1) "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Dice Corp*, 913 F.Supp.2d at 378 (citing M.C.L. § 445.1902(d)). To establish a claim for misappropriation of trade secrets, Plaintiffs must demonstrate "that the information at issue actually constitutes a trade secret." *Id*. (quotations omitted).  In that regard, "[i]t is the ***plaintiff's burden of pleading*** and proving ***the specific nature of the trade secrets***."[2] *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 608 (E.D. Mich. 2015) (emphasis added).

The Complaint here is devoid of any "specific" information concerning the trade secrets and, instead, contains a general reference to information "including but not limited to," "business practices, pricing information, customer contacts, information regarding existing contracts, wholesale prices, as well as the specific needs for each customer." (Compl. ¶¶ 67.) Plaintiffs have thus failed to meet their burden of pleading the "specific nature" of

---

[2] *See also Dura Glob., Techs., Inc. v. Magna Donnelly Corp.*, No. CIV.A. 07-CV-10945-D, 2008 WL 2064516, at *2 (E.D. Mich. May 14, 2008) (plaintiffs must do more than "describe[]" the alleged trade secrets "in general terms such as 'business strategies and inside information,'" and "omit general references such as control plans, process plans, design reviews, drawings and work instructions").

the trade secrets allegedly misappropriated.[3]

Furthermore, Plaintiffs do not plead facts plausibly alleging that they took any meaningful steps to protect the confidentiality of their purported "trade secrets." To the contrary, Exhibit A to the Complaint, an agreement between PSI and an entity seemingly owned by Mark, indicates that PSI freely shared its "wholesale prices" and "pricing information" with customers without so much as asking customers to keep that information confidential. (*See* Compl. Ex. A.)

In addition, Plaintiffs' "customer lists" are not secret because that "information is readily obtainable by proper means . . . ." *Wysong Corp. v. M.I. Indus.*, 412 F. Supp. 2d 612, 629 (E.D. Mich. 2005) (citations omitted). As the *Wysong* court explained, "lists of customers whose identities as purchasers of a given type of product may be obtained through such legitimate channels as telephone books, the internet, or by calling local businesses" are not entitled to trade secret protection. PSI is "a wholesale distributor in the business of providing

---

[3] Plaintiffs' claim would fare no better under Ohio Rev. Code § 1333.61, *et seq.* because, under Ohio law, "conclusory statements as to trade secret factors without supporting factual evidence are" likewise "insufficient to meet the burden of establishing trade secret status." *See, e.g., Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, No. 2:15-CV-28, 2016 WL 3365422, at *3 (N.D. Ohio June 26, 2016); *id.* at *5 (granting motion to dismiss trade-secrets claim where, as here, "Plaintiffs faile[d] to provide any factual specificity regarding the confidential and proprietary business information, business plans, financial information and trade secrets" and, instead, "merely recite[d] the elements of a cause of action under the OUTSA, which does not suffice to state a claim for relief under" *Twombly*).

pharmaceutical" products and LTC is a retailer of prescriptions to long-term care facilities in the State of Michigan.  (Compl. ¶¶ 10-11.)  The identities of long-term care facilities and purchasers of pharmaceuticals products in the State of Michigan can be readily ascertained through telephone books and the Internet and, thus, a list of Plaintiffs' actual or potential customers is not a trade secret.

Finally, Plaintiffs have failed to establish that the information at issue is a "trade secret" as a matter of law because they allege no *facts* even suggesting how or why the information derives independent economic value.   Instead, Plaintiffs rely on the conclusory assertion that the information "ha[s] given Plaintiffs an opportunity to obtain an advantage over competitors who did not know or use them." (Compl. ¶ 66.)  That, too, is precisely the type of "threadbare recital[] of the elements of a cause of action" that is insufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Iqbal*, 556 U.S. at 678.

### 2.    Plaintiffs do not and Cannot Allege That Care Home Misappropriated Plaintiffs' Information.

The Complaint does not allege that Care Home misappropriated Plaintiffs' information.  Under MUTSA, "misappropriation" means either:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

9

>    (A) Used improper means to acquire knowledge of the trade secret.
>
>    (B) At the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit it use.
>
>    (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

M.C.L. § 445.1902(b).

Here, the Complaint does not provide any ***factual*** basis to support the conclusion that Care Home itself "misappropriated" the broad range of information alluded to by Plaintiffs.  First, Plaintiffs do not allege any facts suggesting that Care Home knew that the information was acquired by improper means. Moreover, Plaintiffs do not describe any means, let alone "improper means," that Care Home itself used to acquire the so-called trade secrets.  Instead, Plaintiffs claim that Mark and Mike "individually, as well as in conjunction with Defendant Laureen Musa" and Care Home have "misappropriated" Plaintiffs' trade secrets in some as-of-yet to be identified manner.  (Compl. ¶¶ 68.)  Plaintiffs provide no specific facts to support that assertion.  Likewise, Plaintiffs do not set forth specific

facts even suggesting that ***Care Home*** itself "used or disclosed" Plaintiffs' information or that ***Care Home*** itself "knew or should have known" that the purported trade secrets were indeed "trade secrets" or were acquired through "improper means."

Accordingly, Plaintiffs do not, and cannot, plausibly allege that Care Home is liable for "misappropriating" Plaintiffs' trade secrets and Plaintiffs' Trade Secrets Misappropriation claim against Care Home should be dismissed.

**B.** **The Court Should Dismiss Plaintiffs' Claim for Tortious Interference With Business Relationships Because Plaintiffs Fail to Plead Facts Alleging that Care Home Interfered With Their Business Relationships.**

The Court should likewise dismiss Plaintiffs' claim against Care Home for tortious interference with business relationships. Under Michigan law, "[t]he elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *BPS Clinical Labs. v. Blue Cross & Blue Shield of Michigan*, 552 N.W.2d 919, 924-25 (Mich. Ct. App. 1996).

In addition, to survive dismissal, Plaintiffs must allege "***facts*** that the defendants committed a per se wrongful act, or that they acted with malice and without justification." *Bhan v. Battle Creek Health Sys.*, No. 1:10-CV-202, 2012

11

WL 489161, at *3 (W.D. Mich. Feb. 14, 2012), *aff'd sub nom. Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438 (6th Cir. 2014) (emphasis in original) (citing *Dalley v. Dykema Gossett,* 287 Mich.App. 296, 324, 788 N.W.2d 679, 696 (2010)). In order to "establish that a defendant's conduct lacked justification and showed malice, ***the plaintiff must demonstrate, with specificity, affirmative acts by the defendant*** that corroborate the improper motive of the interference." *Dalley*, 287 Mich.App. at 324 (emphasis added); *see also Rockwell Med., Inc. v. Yocum*, 76 F. Supp. 3d 636, 648-49 (E.D. Mich. 2014), *aff'd*, 630 F. App'x 499 (6th Cir. 2015) (noting that the "plaintiff must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference").

Here, Plaintiffs do not allege (with specificity or otherwise) that Care Home itself committed ***any*** act.  Instead, Plaintiffs allege that ***Mark and Mike*** told customers "that they were no longer employed by Plaintiffs" and "attempted to obtain" Plaintiffs' contracts.  (Compl. ¶ 57.)  And, while the Complaint alleges that "Defendants" contacted "at least" one of Plaintiffs' customers and asked that customer to do business with Care Home, that allegation lumps all "Defendants" together and does not support a claim against Care Home. (*Id*. at ¶ 58.)  But, even if the Complaint alleged that Care Home solicited an entity that happened to also do business with LTC, there would be nothing unlawful about that, given that both LTC and Care Home are engaged in the retail pharmacy business in Michigan and

presumably have the same customer base.

In any event, the Complaint suggests that the "Defendants" who allegedly contacted Plaintiffs' purported customer were Mark and Mike because Plaintiffs claim that said conduct allegedly took place while "Defendants" were "employed by Plaintiffs[.]" (*See id.*)  Care Home has never been "employed by Plaintiffs."  Accordingly, Plaintiffs have failed to plead facts that could plausibly establish that Care Home engaged in any "affirmative acts" that could support liability for tortious interference with Plaintiffs' business relationships.

### C.   The Court Should Dismiss Plaintiffs' Breach of Contract Claim Against Care Home Because No Contract Exists Between Plaintiffs and Care Home.

Care Home is not a party to any of the agreements referenced in and attached to the Complaint. (*See, e.g.*, Compl. Ex.'s A, C-H, J-L.)  Under Michigan law, "[a] party asserting a breach of contract must establish . . . that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party." *Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014).  It is axiomatic "that one must be a party to a contract in order to be held liable for its breach." *Herman v. Bridgewater Park Apartments*, No. 15-CV-12203, 2016 WL 826050, at *5 (E.D. Mich. Mar. 3, 2016) (dismissing claim against non-party to contract, noting that "plaintiffs [did] not have a 'reasonably founded hope' of succeeding on [that] claim" and, thus, the "claim [was] futile . . .").

13

In Count I of the Complaint, Plaintiffs purport to assert a breach of the Asset Purchase Agreement and the Employment Agreements between PSI and TLC, on the one hand, and Mark and Mike, on the other hand. (Compl. ¶¶ 52.) Care Home is not a party to those agreements. (*See id.* Ex.'s J, K and L.)  Thus, to the extent Count I is asserted against Care Home, it fails as a matter of law. *See Herman*, 2016 WL 826050 at *5; *see also In re OnStar Contract Litig.*, 2:07-MDL-01867, 2010 WL 3516691, at *5 (E.D. Mich. Aug. 25, 2010) ("[t]he general rule is that a contract is 'between'—hence binding on—only those who are parties to it, as evidenced by their signatures").

### D.   The Court Should Dismiss Plaintiffs' Tortious Interference and Unfair Competition Claims as Preempted by MUTSA.

Claims for "breach of a common law duty" are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) when preempted by MUTSA. *Cf. Midfield Concession Enterprises, Inc. v. Areas USA, Inc.*, No. 2:14-CV-12174, 2014 WL 4211013, at *4 (E.D. Mich. Aug. 26, 2014) (holding that unfair competition claim "premised on" the alleged use of the plaintiff's "confidential information in order to unfairly compete with [the plaintiff] resound[ed] as a MUTSA trade secrets misappropriation claim" and was thus "preempted by MUTSA").  Importantly, "the disputed status of information as a trade secret does not preclude a court from determining whether a claim or claims are displaced by MUTSA." *Midfield Concession Enterprises, Inc. v. Areas USA, Inc.*, No. 2:14-CV-12174, 2014 WL

4211013, at *3 (E.D. Mich. Aug. 26, 2014).  Thus, Plaintiffs' failure to state a claim under MUTSA does not save common law claims that are based on the same nucleus of operative facts as Plaintiffs' baseless MUTSA claims.

Here, Plaintiffs' unfair competition claim is premised solely on their, albeit meritless, claim for misappropriation of trade secrets.  The Complaint does not attempt to set forth any facts to support the purported claim for unfair competition but, instead, merely rehashes the baseless legal conclusion that "Defendants" somehow misappropriated "trade secrets," which Plaintiffs claim "result[ed] in unfair competition." (Compl. ¶ 73.)  Likewise, Plaintiffs' claim for tortious interference with business relationships, appears to be based, at least in part, on Mark and Mike's alleged use of purported "confidential information" that Mark and Mike allegedly obtained through their employment with LTC. (*See id*. ¶¶ 66-68 and *id*. at ¶ 57.)  Because Plaintiffs' claims for unfair competition and tortious interference are premised on the alleged misappropriation of Plaintiffs' purported trade secrets, they must be dismissed as preempted by MUTSA.

### E.   The Court Should Dismiss Plaintiffs' Defamation Claim Against Care Home Because Plaintiffs Fail to Plead Facts Alleging That Care Home Made Any False Statement or Harmed Plaintiffs.

The Court should also dismiss Plaintiffs' purported Business Defamation claim against Care Home because Plaintiffs have failed to plead facts sufficient to support that claim.  To establish a defamation claim, the plaintiff must

allege "(1) a false and defamatory statement about the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication." *Young v. CSL Plasma Inc.,* No. 15-CV-10080, 2016 WL 1259103, at *6 (E.D. Mich. Mar. 31, 2016) (citing *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014)).  The "plaintiff must be specific when alleging a defamation claim; he cannot rely on general and conclusory statements." *Id*. Instead, the "plaintiff must ***specifically identify*** the statements alleged to be defamatory." *Id*. (emphasis added) (citing *Williams v. Detroit Bd. of Educ.*, 523 F. Supp. 2d 602, 606 (E.D. Mich. 2007)).

Critically, "[t]he essentials of a cause of action for [defamation] must be stated ***in the complaint*** . . . ." *Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 447 (6th Cir. 2014) (emphasis in original) (dismissing defamation claim where Plaintiff's "summary [did] not satisfy the requirement of setting forth the exact language alleged to be defamatory, and it raise[d] the inference that the statements at issue were merely un-actionable opinions rather than objective statements of fact upon which a claim could proceed").  Where the plaintiff merely "states in general terms that [it] was defamed[,]" the plaintiff fails "to sufficiently plead [a] defamation claim." *Young*, 2016 WL 1259103, at *6.

In *Young*, the court dismissed a defamation claim where, like Plaintiffs do here, the plaintiff claimed that his "co-workers . . . submit[ted] false statements about plaintiff, in an attempt to portray plaintiff as a problem employee." *Id*.   Similarly, Plaintiffs here allege that "Defendants"—again, not Care Home—"told Plaintiffs' customers that . . . Plaintiffs were not providing proper services and were charging them too much." (Compl. ¶ 80.)   Because, as in *Young*, the Complaint "fail[s] to set forth with specificity the necessary elements of a defamation cause of action: the defamatory words complained of, the connection of the defamatory words with plaintiff, and the publication of the alleged defamatory words," the Court should dismiss Plaintiffs' defamation claim against Care Home. *See Young*, 2016 WL 1259103, at *6 (citing *Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich. App. 583, 590 (1984)).

**F.     The Court Should Dismiss Plaintiffs' Conversion Claim Against Care Home Because Plaintiffs Fail to Plead Facts Alleging that Care Home is Exercising Dominion Over Plaintiffs' Property.**

Plaintiffs' conversion claim against Care Home should be dismissed because the Complaint fails to plead any facts even suggesting that Care Home is exercising domain over any identifiable personal property of Plaintiffs.   Under Michigan law, "[c]onversion involves any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Jason J. Armstrong, D.D.S., P.C. v. O'Hare*, No. 308635, 2014 WL

17

1614474, at *4 (Mich. Ct. App. Apr. 22, 2014).  An "act of dominion is wrongful when it is inconsistent with the ownership rights of another." *Id*.  In order "to maintain a cause of action for conversion, an interest in specific, identifiable personalty must be pleaded and proved." *Lettinga v. Agristor Credit Corp.*, 686 F.2d 442, 448 (6th Cir. 1982).

Plaintiffs' claim for conversion rests on their unsubstantiated conclusion that "Defendants" have "wrongfully converted the funds, assets, and opportunities that should have been placed into ASAP and/or LTC."  (Compl. ¶ 109.)  First, Plaintiffs' conversion claim should be dismissed because it is based solely on "labels and conclusions," and an—albeit incorrect—formulaic recitation of the elements of that cause of action.  *D'Ambrosio,* 747 F.3d at 383.  Second, nothing in the Complaint remotely alleges that Care Home is "exercising domain" over Plaintiffs' personal property.  (*See* Compl. ¶¶ 109-110.)

Finally, Plaintiffs' conversion claim is fundamentally flawed as a matter of law because the Complaint fails to plead facts suggesting that the underlying "property" is specific or identifiable in any way.  In that regard, Plaintiffs "conversion" claim seems to be based on "funds, assets, and opportunities" that Plaintiffs claim "should have been placed into ASAP and/or LTC." (*Id*. at ¶ 109.)  It is well established that "an action for conversion of money is not maintainable unless there is an obligation on the part of the defendant to

18

return or apply the specific money entrusted to his care." *Carpenters' Pension Trust Fund Detroit & Vicinity v. Laminate Creations*, 803 F.2d 718 (6th Cir. 1986).    The Complaint contains no allegations whatsoever suggesting that Plaintiffs and Care Home ever interacted, let alone that Plaintiffs "entrusted" Care Home with the unidentified "funds" purportedly underlying their conversion claim.

Likewise, to the extent the conversion claim is based on unspecified "opportunities," a conversion claim cannot be based on "intangible property" unless the intangible property is "represented by or connected with something tangible." *Jason J. Armstrong, D.D.S., P.C. v. O'Hare*, No. 308635, 2014 WL 1614474, at *5 (Mich. Ct. App. Apr. 22, 2014).    While it is far from clear what "opportunities" Plaintiffs are referring to, there is no doubt that the "opportunities" have no "solid, identifiable, intellectual base and are capable of being exclusively owned and possessed." *Id*. at * 6.    And, inasmuch as the Complaint purports to state a claim for the conversion of unidentified "assets," that moniker falls far short from describing identifiable, specific property.    Thus, Plaintiffs have also failed to plausibly allege a claim for conversion.

G. **The Complaint Also Fails to Allege a Plausible Claim for Breach of Fiduciary Duty Because Care Home Does Not Owe Plaintiffs Any Duties.**

To the extent Plaintiffs' breach of fiduciary duty claim (Count V) is directed at Care Home, the claim must be dismissed because there is no allegation

that Care Home owes Plaintiffs a fiduciary duty.  Because a claim for "breach of fiduciary duty require[s], . . . that defendants owed plaintiffs a duty[,]" Plaintiffs have failed to allege a breach of fiduciary duty claim against Care Home.  *Saad v. Hometown Grp. Real Estate, Inc.*, No. 226764, 2002 WL 1424434, at *1 (Mich. Ct. App. June 28, 2002).

## H.   The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim Against Care Home Because Plaintiffs Failed to Plead Facts to Allege That Care Home Has Been Unjustly Enriched.

Plaintiffs seem to base their unjust enrichment claim on the $1,303,977.38 that Plaintiffs claim ASAP, Mark and Mike owe PSI for pharmaceuticals purchased by ASAP from PSI.  (*See* Compl. ¶ 91; *see also id.* at ¶ 19.)   Care Home is not alleged to and, indeed, is not a party to any of the agreements purportedly underlying those purchases.  (*See* Compl. Ex.'s A, B-H and J.)   Nor does the Complaint allege any facts suggesting that Care Home derived any benefit from the purported "goods" allegedly "ordered and received" by ASAP, Mark and Mike. (*See id.* at 91.)  Thus, Plaintiffs cannot sustain a claim for unjust enrichment against Care Home.  *See Herman*, 2016 WL 826050, at *5 ("[i]n order to sustain a claim of unjust enrichment, the plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant").

20

I.   **The Court Should Dismiss Plaintiffs' Conspiracy Claim Against Care Home Because The Complaint Fails to Plead Facts to Allege That Care Home Acted in Concert With its Co-Defendants.**

Finally, Plaintiffs' conspiracy claim against Care Home must also be dismissed because it is based on nothing other than conclusory assertions that do not plausibly allege that Care Home acted in concert with Mark, Mike and/or Laureen Musa, and because Plaintiffs' have failed to allege an independent cause of action for which Care Home can be held liable.  A "conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means." *Cyborowski v. Ennest*, No. 08-13736-BC, 2009 WL 1658181, at *7 (E.D. Mich. June 11, 2009).  Further, "[a]n allegation of civil conspiracy, standing alone, is not actionable."  *Cousineau v. Ford Motor Co.*, 140 Mich. App. 19, 37, 363 N.W.2d 721, 730 (1985).

Here, Plaintiffs does not contain any factual allegations regarding a "concerted action" between Care Home and its co-defendants.  The Complaint, again, offers no more than a bare legal conclusion that "Defendants entered into an agreement to conspire to unlawfully divert and misappropriate the" unidentified "assets and" unknown "business opportunities of Plaintiffs[,]" and somehow "acted" in furtherance of that conspiracy.  (Compl. ¶¶ 113-114.)

The Complaint, however, does not plead a single specific, affirmative

act by Care Home that could possibly support that legal conclusion. Rather, Plaintiffs claim that Care Home is "aware of" Mark and Mike's "obligations and, therefore, [is]" somehow "engaging in an unlawful conspiracy with" Mark and Mike. (*Id*. at ¶ 35.)  Such "allegations are, at best, conclusory in nature and do not adequately allege that" Care Home acted in concert with Mark and Mike. *See Cyborowski*, 2009 WL 1658181, at *7.

Plaintiffs' conspiracy claim also fails because, as set forth above, Plaintiffs have failed to plausibly allege any tort cause of action that Care Home could be liable for. *Early Detection Ctr., P.C., v. New York Life Ins. Co*., 157 Mich. App. 618, 632, 403 N.W.2d 830, 836 (1986) ("a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief could be granted against Care Home, and the Court should (1) dismiss, with prejudice, all claims against Care Home pursuant to Fed. R. Civ. P. 12(b)(6); and (2) grant Care Home any other relief the Court deems appropriate.


Respectfully submitted,

Date: July 8, 2016

*/s/ Kathryn E. Hickner*
Kathryn E. Hickner (P62285)
Paul R. Harris (Ohio Bar # 0079538)
(Admission Pending)
Daniela Paez (Ohio Bar # 0091212)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
216-583-7000
Fax: 216-583-7001
khickner@ulmer.com
pharris@ulmer.com
dpaezparedes@ulmer.com

*Attorneys for Defendant Care Home Rx, Corp.*

## __CERTIFICATE OF SERVICE__

I hereby certify that on July 8, 2016, I electronically filed the foregoing paper using the Court's ECF system.


_/s/ Kathryn E. Hickner_
One of the Attorneys for
Defendant Care Home Rx, Corp.

24