UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESCRIPTION SUPPLY, INC. ET. AL.,

                    Plaintiffs,

v.

MOUSSA "MARK" MUSA, ET. AL.,

                    Defendants.

_____/

Case No. 16-12070

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID G. GRAND

**ORDER GRANTING IN PART MOTION TO DISMISS [16]; GRANTING PLAINTIFF
LEAVE TO AMEND COMPLAINT**

Plaintiffs filed a complaint in the Northern District of Ohio on January 22,
2016 [3]. The case was transferred to the Eastern District of Michigan on June 7,
2016 per Plaintiffs' request under 28 U.S.C. §1404. On July 8, 2016, Defendant
Care Home RX. Corp. ("Care Home") filed a Motion to Dismiss [6]. Plaintiffs
responded on August 1, 2016 [14] and Defendant Care Home replied on August
15, 2016 [16]. The Court finds the motion suitable for determination without a
hearing, as provided by Local Rule 7.1(f)(2), with respect to all of Plaintiff's
claims brought against Defendant Care Home.  For the reasons stated below,
Defendant's Motion to Dismiss is **GRANTED in part,** and Plaintiffs' tortious
interference with business relationships, defamation, unjust enrichment, conversion
and conspiracy claims are dismissed and **DENIED in part** as to Plaintiffs' claims
of misappropriation of trade secrets and unfair competition claims. Additionally,

Plaintiffs are given leave to amend complaint to reflect the Court's determination that Michigan state law applies.

## FACTUAL BACKGROUND

Plaintiff Prescription Supply Inc. ("PSI") was ASAP RX, Inc. ("ASAP")'s main supplier of prescriptions for several years prior to July 2015. Defendants Mark Musa and Mike Musa's pharmacy, ASAP, entered into a Credit Agreement with Plaintiffs and further granted to Plaintiffs a security interest in all of ASAP's inventory. Defendants Mark Musa and Mike Musa each executed an Unconditional Personal Guaranty of the Corporate Debt of ASAP in favor of PSI, and subsequently began falling behind on their payments due to the credit account in December 2013.

PSI believed the likelihood of collecting the amounts due (over $1 million) was slim, so PSI and Defendant Mark Musa and Mike Musa entered into an Asset Purchase Agreement (APA) on July 20, 2015, which had a far less value ($300,000) than the debt owed to Plaintiffs. Pursuant to the APA, Defendants Mark and Mike Musa agreed to be employed at PSI, through its wholly owned subsidy Plaintiff LTC Pharmacy LLC ("LTC"), for at least six months, and further agreed to be subject to terms containing non-competition, non-disclosure and non-solicitation provisions. Under the APA, so long as certain conditions were met, the debt owed to PSI would be extinguished.

The complaint alleges that while working for Plaintiffs, Defendants Mark and Mike Musa engaged in unlawful competitive behavior prohibited by the APA and Employment Agreements. Defendants Mark and Mike Musa are alleged to have used the assistance of Defendant Laureen Musa and Care Home to divert customers and opportunities to Care Home, unlawfully stealing customers and opportunities. Plaintiffs allege, upon information and belief, that Care Home was formed in August 2014 for the purpose of continuing the retail pharmacy business of Defendant Mark and Mike Musa, and that it was in competition with LTC. Plaintiffs allege that Laureen Musa and other employees of ASAP working at Care Home diverted Plaintiffs' customers to the new pharmacy in knowing violation of the APA and employment agreements. Plaintiffs further allege that Defendant Care Home is knowingly profiting from its violation of these agreements.

### STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b).  On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).

## ANALYSIS

### 1. CHOICE OF LAW

Having originally filed their complaint in the Northern District of Ohio,
Plaintiff's complaint contains claims raised under Ohio state law. Defendant argues
that, under Michigan choice of law jurisprudence, Michigan state law should
apply. Defendant asserts that Michigan law applies in this diversity case under the
rule articulated in *Olmstead v. Anderson*, 428 Mich. 1 (1986) and *Sutherland v.
Kennington Truck Serv.*, 454 Mich. 274 (1997). Plaintiffs argue that under *Van
Dusen v. Barrack*, 376 U.S. 612, 639 (1964), Ohio state law should apply because
the Court must apply the law that the Ohio District Court would have applied to the
state law claims.

This case was transferred under 28 U.S.C. §1404 from the Northern District
of Ohio at the request of the Plaintiffs, without objection from the Defendants, in
order to avoid a possible destruction of complete diversity. [2]. Per *Van Dusen v.
Barrack*, the *Erie* doctrine requires that Courts apply the choice of law rules of the
transferor state if a case is transferred into their jurisdiction under §1404. 376 U.S.
612, 639 (1964). In Ohio, the choice of law rules dictate that "the law of the place
of injury controls unless another jurisdiction has a more significant relationship to
the lawsuit." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir.
2011), citing *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 474 N.E.2d 286, 289

(1984). When deciding which State has the most significant relationship, Ohio
courts consider:

> (1) the place of the injury;
> (2) the location where the conduct causing the injury took place;
> (3) the domicile, residence, ... place of incorporation, and place of
> business of the parties;
> (4) the place where the relationship between the parties ... is located;
> (5) any of the factors listed in Section 6 of the Restatement (Second)
> of Conflict of Laws

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

In this case, it is clear that Michigan state law should apply. All parties but
one Plaintiff reside or maintain a principle place of business in Michigan, and
therefore any injuries that may have occurred were also situated in Michigan. The
alleged acts of harm stemming from the violations of contract, i.e. the taking of
clients from Plaintiffs, and misuse of trade secrets, *et. al.*, also occurred in
Michigan, as did the underlying relationship of the various contracts between
Plaintiffs and Defendants as well as the individual Defendants' relationship with
Defendant Care Home. Finally, as Defendants illustrate in their response brief,
there is little substantive difference between the jurisprudence governing the
claims at issue in Ohio and Michigan. Therefore there is no risk of Plaintiffs being
entitled to greater relief if Michigan law is applicable rather than Ohio state law.
Accordingly, under Ohio choice of law rules, Michigan law should apply in this
case.

Because Plaintiffs' complaint contemplates claims brought under state law, the Court grants Plaintiffs leave to amend their complaint to reflect the choice of law decision in the interests of justice. However, the claims that the Court has dismissed in this complaint are not affected by this limited amendment of the complaint, because based on the substance of the complaint and the legal arguments made by Plaintiffs under Michigan law in the response brief, a valid claim cannot be stated for the claims that are dismissed under a Michigan law analysis and any amendment that would affect this dismissed claims would be futile based on the facts alleged against Care Home in the complaint. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

## 2. MISAPPROPRIATION OF TRADE SECRETS

Plaintiffs allege that Defendant Care Home has misappropriated Plaintiffs' trade secrets, including business practices, pricing information, customer contacts, information regarding existing contracts, wholesale prices, and the specific needs of each customers. [1 at ¶66-69]. As part of an employment agreement with LTC signed by Defendants Mike and Mark Musa, this information was to be kept confidential for the sole benefit of LTC. [1-11; 1-12]. The complaint also alleges that Defendant Care Home was "fully aware of Mark and Mike Musa's obligations contained in the APA and Employment Agreements." [1 at ¶35]. Defendant contends the Plaintiffs have not stated a claim for misappropriation of trade secrets

because they have failed to establish that the information at issue qualifies as a "trade secret" as a matter of law, and because they do not allege in the complaint that Defendant Care Home "misappropriated" the information in any way.

In Michigan, a claim of misappropriation of trade secrets has three elements, "(1) the existence of a trade secret, (2) the defendant's acquisition of the trade secret in confidence; and (3) the defendant's unauthorized use of it." *Polytorx, L.L.C. v. Univ. of Michigan Regents*, No. 318151, 2015 WL 2144800, at *7 (Mich. Ct. App. May 7, 2015), citing *Stromback v. New Line Cinema*, 384 F3d 283, 302 (CA 6, 2004). Trade secrets are defined as:

> (d)… information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mich. Comp. Laws Ann. § 445.1902.

Defendant argues that Plaintiffs cannot state a claim for misappropriation of trade secrets because the alleged secrets, including consumer lists, do not constitute trade secrets under Michigan law. Michigan Courts have held that customer lists can be protected under the Michigan Uniform Trade Secrets Act (MUSTA) if they

are detailed information that cannot be readily available through another source, and thus in some circumstances this can be protected as trade secrets in a confidentiality agreement. *Laethem Equip. Co. v. Deere & Co.*, No. 05-10113, 2007 WL 2433980, at *18 (E.D. Mich. Aug. 14, 2007).

In the complaint, Plaintiffs allege that Defendant Mike and Mark Musa signed a confidentiality agreement, as part of their employment contract with LTC that included a provision that describes the information that is considered trade secrets under the MUSTA claim:

> Employee acknowledges that during his employment with LTC he will come into possession of trade secrets or other confidential and proprietary information of LTC (all of which will be referred to in this Agreement as "proprietary information"), specifically including, among other things, the identity of clients and prospective clients of LTC; client files and detailed information concerning client needs and requirements;  proposals designed to meet client needs or requirements; product designs, drawings, and specifications, or their drafts; formulas; pricing, cost, and margin information; and other financial information and records of LTC. Employee acknowledges that the foregoing types of proprietary information are highly confidential to LTC, are valuable, give a competitive advantage to LTC, and could not, without great expense and difficulty, be obtained or duplicated by others who have not been able to acquire such information by virtue of employment with LTC.

[1 at ¶27]. This agreement language appears to cover exactly the type of information that Michigan Courts have considered to be trade secrets. *See e.g. Hayes–Albion v. Kuberski*, 421 Mich. 170, 182, 364 N.W.2d 609, 615 (1984) (customer lists developed by a former employee and information relating to a

customer's needs may be considered trade secrets if the employee is bound by a confidentiality agreement); *Laethem Equip. Co. v. Deere & Co.*, No. 05-10113, 2007 WL 2433980, at *18 (E.D. Mich. Aug. 14, 2007) (holding same). Since these types of customer lists can constitute trade secrets, it is a question of fact whether the lists and various information were readily identifiable and thus not trade secrets, or if they indeed are the type of detailed information that is considered to be protected under MUSTA.

Defendant Care Home also alleges that the claim fails to state that Plaintiffs' took any measures to protect the alleged trade secrets, a requirement under Michigan law to qualify as a trade secret. MCL §445.1902(d)(ii). However, as detailed in the confidentiality agreement signed by Defendants Mike and Mark Musa at the time of their employment, Plaintiffs clearly took reasonable efforts to protect the disputed trade secret information, in fact invoking language from Michigan MUSTA case law to describe the information at hand.

Under the MUSTA, misappropriation means either:

(i)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

(ii)  Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

(A) Used improper means to acquire knowledge of the trade secret.

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Mich. Comp. Laws Ann. § 445.1902(b).

In the complaint, Plaintiffs clearly alleges that Defendant Care Home is "fully aware of Mark and Mike Musa's obligations contained in the APA and Employment Agreements" which encompasses the confidentiality agreement. [1 at ¶35]. The complaint also alleges that Defendant Laureen Musa, wife of Defendant Mark Musa, owns/operates Defendant Care Home and that Defendants Mike and Mark Musa have been frequently observed at Defendant Care Home, and further states that they work there. Given all of this information, the complaint successfully alleges that Defendant Care Home acquired trade secrets of Plaintiffs and had reason to know that the secrets were in fact improperly acquired.

While Defendant Care Home argues that Plaintiffs do not allege any specific facts that Care Home knew the information was acquired by improper means, the complaint as a whole lays out the claim for misappropriation of trade secrets, and

clearly states that Care Home knew about the confidentiality agreements that the Mark and Mike Musa had signed, and wrongfully used that information for their own benefit to secure new clients. Therefore, Defendant Care Home's Motion to Dismiss is denied as to the misappropriation of trade secrets claim.

### 3. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS CLAIMS

Defendant argues that Plaintiffs' claims of unfair competition and tortious interference with business relationships should be dismissed because they are preempted by MUTSA. Defendant Care Home also argues that Plaintiffs' tortious interference claim must be dismissed for failing to plead facts alleging that Care Home interfered with their business relationships.

MUTSA contains a preemption provision, which states that the "act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *Midfield Concession Enterprises, Inc. v. Areas USA, Inc.*, No. 2:14-CV-12174, 2014 WL 4211013, at *3 (E.D. Mich. Aug. 26, 2014), citing Mich. Comp. Laws § 445.1908(2)(a). However, MUTSA does not preempt "other civil remedies that are not based on misappropriation of a trade secret." *Id*, citing MCL §445.1908(2).

In their tortious interference with business claim, Plaintiffs allege that Defendants Mark and Mike Musa "made false representations" to Plaintiffs' customers on behalf of Care Home and "attempted to obtain Plaintiffs' contracts in

order to benefit themselves and Care Home by using Plaintiffs' confidential

information that they had access to as a result of being employed by Plaintiffs"

causing Plaintiffs to lose business relationships and expectancies between Plaintiffs

and their customers. [1 at ¶57]. Plaintiffs allege that all Defendants knew of these

contracts and business relationships and that they intended to use these acts of

tortious interference to improperly interfere with Plaintiffs' contracts and business

relationships. [1 at ¶62-63].

The elements of tortious interference with a business relationship include (1)

"the existence of a valid business relation or expectancy," (2) "knowledge of the

relationship or expectancy on the part of the interferer," (3) "an intentional

interference inducing or causing a breach or termination of the relationship or

expectancy," and (4) "resultant damage to the party whose relationship has been

disrupted." *Lakeshore Cmty. Hosp., Inc. v. Perry*, 212 Mich. App. 396, 401, 538

N.W.2d 24, 27 (1995).

Additionally, tortious interference claims "must allege the intentional doing

of a per se wrongful act or the doing of a lawful act with malice and unjustified in

the law for the purpose of invading the contractual rights or business relationship

of another." *Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 443 (6th Cir.

2014), citing *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich.App. 125, 131, 649

N.W.2d 808, 812 (Mich.App.2002). To establish that a Defendant's conduct lacked justification and exhibited malice, "the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Dalley v. Dykema Gossett*, 287 Mich. App. 296, 324, 788 N.W.2d 679, 696 (2010).

Defendant contends that Plaintiffs have not alleged that Care Home committed any act, and that the claim relies on the acts of Defendants Mike and Matt Musa, and therefore the claim must be dismissed against Defendant Care Home. Additionally, Defendant also states that even if the complaint alleged that Care Home committed an affirmative act, there is nothing unlawful about Care Home taking customers from Plaintiffs since both companies are engaged in the retail pharmacy business in Michigan and possess the same customer base.

In the complaint, Plaintiffs do not plead any specific affirmative act that Defendant Care Home undertook. While they allege that Care Home had knowledge of the actions of Defendants Mike and Mark Musa, they do not allege that these acts were supported or instigated by Defendant Care Home, or that it performed any affirmative acts that underlies the tortious interference claim. Rather, Plaintiffs only state that Defendant Care Home "knew of [Plaintiffs']

contracts and business relationships, and expectancies between Plaintiffs and its customers." [1 at ¶61].

While Plaintiffs allege that they have satisfied the standard by alleging that Defendant Care Home acted by and through Defendants Mike and Mark Musa, they fail to cite any case which supports the proposition that the requirements under Michigan law for a tortious interference claim can be satisfied by mere knowledge of the wrongful acts of others that interfere with business relationships of a Plaintiff. Plaintiffs here have failed to plead any affirmative acts on the part of Defendant Care Home which relate to the tortious interference with business relationship claim. Accordingly, this claim is dismissed as against Defendant Care Home.

Plaintiffs also bring an unfair competition claim against Defendants. In the complaint, they allege that "Defendants have engaged in an unlawful conspiracy which has involved the misappropriation of trade secrets, the violation of business agreements, all designed to unfairly and unlawfully compete against Plaintiffs in the marketplace." [1 at ¶72]. Plaintiffs further allege that Defendants have enticed customers "to transfer to Defendant Care Home with the promise that they will not have to collect or pay co-pays," thus committing a prohibited trade practice to unfairly compete with Plaintiffs. [1 at ¶48].

The allegations of engaging in the prohibited trade practice of promising that customers would not have to fund co-pays with respect to the unfair competition claim are allegations describing "conduct that could be deemed unethical or unfair irrespective of whether trade secrets are involved" and therefore this claim is not preempted under MUSTA and should not be dismissed. *Dana Ltd. v. Am. Axle & Mfg. Holdgins, Inc.*, No. 1:10-CV-450, 2012 WL 2524008, at *13 (W.D. Mich. June 29, 2012).

### 4. BUSINESS DEFAMATION

Plaintiffs also bring a claim of business defamation against Defendant Care Home, alleging in the complaint that "Defendants told Plaintiffs' customers that, among other things, Plaintiffs were not providing proper services and were charging them too much." [1 at ¶80]. Under Michigan law, the four elements of defamation are:

> (1) a false and defamatory statement concerning the plaintiff,
> (2) an unprivileged communication to a third party,
> (3) fault amounting at least to negligence on the part of the publisher, and
> (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication

*Ghanam v. Does*, 303 Mich. App. 522, 544, 845 N.W.2d 128, 142 (2014). Michigan Courts have also held that defamation claims have a specificity requirement, and that the complaint must include recitation that "[w]ho made the

statement and to whom publication was made are included in these requirements"
of the elements of a defamation claim. *Hantz Grp., Inc. v. Haney*, No. 292954,
2010 WL 4864812, at *5 (Mich. Ct. App. Nov. 30, 2010), citing *Ledl v. Quik Pik
Food Stores*, Inc., 133 Mich. App. 583, 589, 349 N.W.2d 529, 532 (1984). In the
complaint at issue, Plaintiffs do not identify who made the statement or to whom
the statement was made. Therefore, Defendant Care Home's motion to dismiss
Plaintiff's defamation claim is granted.

**5. UNJUST ENRICHMENT**

Under Michigan law, "[t]he elements of a claim for unjust enrichment are:
(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity
resulting to plaintiff because of the retention of the benefit by defendant." *Barber
v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993), citing *Dumas v. Auto Club
Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652 (1991). Defendant argues that
Plaintiffs have not stated a claim because the complaint does not allege any facts to
suggest that Care Home obtained any benefit from the goods that were allegedly
ordered and received by Defendants and therefore this claim should be dismissed
as to Defendant Care Home.

In the complaint, Plaintiffs allege that Defendants were unjustly enriched
"by failing and refusing to pay Plaintiffs for goods ordered and received by
Defendants and, upon information and belief, resold by Defendants." [1 at ¶91].

Plaintiffs argues that this expressly establishes a claim for unjust enrichment because the allegations include all Defendants in the claim and further assert that all Defendants, including Care Home, ordered and received these goods and resold them without paying Plaintiffs.

The Court agrees with Defendant Care Home that this claim should be dismissed as to Care Home. The complaint claims that Defendants were unjustly enriched in the amount of $1,303,977.38 for "failing and refusing to pay Plaintiffs for goods ordered and received by Defendants and, upon information and belief, resold by the Defendants." [1 at ¶91]. The complaint also identifies that these goods were purchased by ASAP and Mark and Mike Musa from PSI. However, the complaint fails to adequately allege that Defendant Care Home was a party to those agreements, or indeed received any profit from the purchases by the individual Defendants or ASAP. The mere use of the term "Defendants" does not automatically include Care Home, and when the complaint identifies Defendants Mark and Mike Musa as the purchasers and debt holders of the $1,303,977.38, there is no indication contained in the complaint that the separate entity of Care Home was implicated in any of these allegations. Therefore, this claim must be dismissed as to Defendant Care Home.

## 6. CONVERSION

In Michigan, common law conversion is defined as, "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." (Pollard v. J.P. Morgan Chase Bank, NA, 50 F. Supp. 3d 829, 834-35 (E.D. Mich. 2014), quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600 (1992). A conversion claim must plead "an interest in specific, identifiable personalty." *Lettinga v. Agristor Credit Corp.*, 686 F.2d 442, 448 (6th Cir. 1982), citing *Hance v. Tittabawassee Boom Co.*, 70 Mich. 277 (1888). "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich.App. 94, 111 (1999). "[T]he defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Id* at 112.

In the complaint, Plaintiffs do not plead any facts to establish that Defendant Care Home had any obligation to return any of the alleged "funds, assets and opportunities" that Plaintiffs lost from its loss of business from customers and clients that allegedly moved to Defendant Care Home. There are no allegations in the complaint that Defendant Care Home ever interacted with Plaintiffs, had any type of relationship with Plaintiffs or would have had any obligation to return any

unspecified "funds, assets and opportunities" that they gained by retaining ex-customers from Plaintiffs.

With respect to the alleged conversion of "opportunities," Michigan law states that to plead a valid claim for conversion of intangible property, the intangible rights must be "merged in, or identified with, some document or other tangible property." *Jason J. Armstrong, D.D.S., P.C. v. O'Hare*, No. 308635, 2014 WL 1614474, at *5 (Mich. Ct. App. Apr. 22, 2014). In the complaint at bar, the undefined and vague "opportunities" enumerated in the conversion claim clearly have no "solid, identifiable, intellectual base…capable of being exclusively owned and possessed." *Id* at *6. Moreover, the conversion claim surrounding "assets" does not concern any specific, identifiable property. *Lettinga*, 686 F.2d at 448. Therefore, Defendant Care Home's Motion to Dismiss as to the conversion claim is granted.

## 7. CONSPIRACY

Under Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384, 670 N.W.2d 569, 580 (2003), aff'd, 472 Mich. 91, 693 N.W.2d 358 (2005). In their complaint, Plaintiffs allege that "Defendants entered into an agreement to conspire

to unlawfully divert and misappropriate the assets and business opportunities of Plaintiffs." [1 at ¶113].

Defendant Care Home argues that Plaintiffs have not adequately alleged that it worked in concerted action with the individual Defendants to conspire against Plaintiffs. Plaintiffs assert that they have adequately alleged a conspiracy claim, based on their allegations in the complaint. However, Plaintiffs merely point to bare boned allegations that amount to no more than a recital of the elements of the claim, including "Defendants entered into an agreement to conspire…" and "Defendants acted in furtherance of their agreement to conspire…" [1 at ¶113-14]. There are no facts alleged in any part of the complaint to support a claim of conspiracy against Care Home. These allegations are no more than restatement of a legal conclusion and do not establish any supporting specific facts to uphold the allegations that Defendant Care Home acted to conspire. Therefore they do not support a claim of conspiracy. *See Cyborowski v. Ennest*, No. 08-13736-BC, 2009 WL 1658181, at *7 (E.D. Mich. June 11, 2009).

## CONCLUSION

Defendant Care Home filed a Motion to Dismiss the complaint in its entirety as against Care Home. The Court grants in part and denies in part this motion. The Court grants this motion as to the claims of tortious interference with business relationships, defamation, unjust enrichment, conversion and conspiracy and

denies to as to the claims of misappropriation of trade secrets and unfair

competition. Additionally, the Court finds that Michigan law applies to this case

and Plaintiffs are given leave to amend their complaint to reflect that

determination. However, given the facts alleged in the complaint, it would be futile

to grant Plaintiffs leave to amend any of the claims dismissed in this order as to

Care Home, and therefore those claims remain dismissed as against Defendant

Care Home.

    **IT IS ORDERED** that Defendant Care Home's Motion to Dismiss [16] is

**GRANTED in part**, dismissing Plaintiffs' claims of tortious interference with

business relationships, defamation, unjust enrichment, conversion and conspiracy

against Defendant Care Home, and **DENIED in part** as to Plaintiffs' claims of

misappropriation of trade secrets and unfair competition against Defendant Care

Home.

    **IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend the

complaint to reflect the Court's determination that Michigan state law applies in

this case.

    **SO ORDERED**


                                         s/Arthur J. Tarnow
                                         Arthur J. Tarnow
Dated: February 27, 2017          Senior United States District Judge